**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ING BANK, FSB, a federally-chartered savings bank, <br><br> Plaintiff, <br><br> vs. <br><br> GABRIELA MATA, an individual; ROYAL FINANCIAL ARIZONA INC., an Arizona corporation; NICHOLAS A. HENKELS and Abagale Gullickson, former husband and wife, <br><br> Defendants. | No. CV-09-748-PHX-GMS <br><br> **ORDER** |

Pending before the Court is Defendants Royal Financial Arizona's and Nicholas Henkels' Motion to Dismiss.[1] (Dkt. # 12.) For the following reasons, the Court grants the motion in part and denies it in part.

**BACKGROUND**

In August 2006, ING Bank, FSB ("ING") purportedly entered into a "Broker Origination Agreement" with RFA, in which ING committed to fund residential mortgage loan application packages submitted by RFA if those application packages met certain criteria. RFA was obligated to perform certain duties, including obtaining, analyzing, and

---

[1] Plaintiff has been unable to serve Gabriela Mata, who has since filed bankruptcy, and Abagale Gullickson, who is no longer married to Defendant Henkels. Plaintiff has since requested that these parties be dismissed without prejudice. (Dkt. # 20.)

verifying information from each prospective borrower to ensure each borrower met all applicable criteria. As part of the agreement, RFA represented that the information submitted was correct and that nothing would adversely affect the loans' values or cause the loans to become delinquent. RFA also agreed not to submit any loan packages that were false or fraudulent.

In May 2007, RFA presented to ING a loan package for Mata, in which Mata sought a refinanced first mortgage in the amount of $1,424,000. Henkels, on behalf of RFA, originated the loan, interviewed Mata, and assisted with the preparation and submission of her application. The loan application represented that Mata's monthly income was $29,000, that her net worth was $507,195, that the owned real estate included two properties, and that Mata would use the property as her primary residence. Relying on these representations, ING loaned Mata the requested funds.

Further investigation revealed that, contrary to the loan application, Mata never intended to occupy the property and Mata's income for 2007 was only $44,828. Mata made only one payment on the property, and ING instituted a trustee sale on May 30, 2008, in which it made a full-credit bid for $1,511,484.[2]

ING filed suit nearly a year later on April 13, 2009, alleging nine claims (only seven of which were against either RFA or Henkels): (1) Breach of Contract; (2) Negligence; (3) Breach of Fiduciary Duty; (4) Fraudulent Misrepresentation/Omission; (5) Negligent Misrepresentation/Nondisclosure; (6) Unjust Enrichment; and (7) Attorneys' Fees. Plaintiff seeks "damages in the amount of $1,567,609, which is the difference between the amount outstanding on the original Mata Loan on which only one (1) principal payment was made and the net amount ING obtained through the sale of the Property." (Dkt. # 1 at 15.) In addition, ING alleged that it "suffered damages due to the loss of interest and other income

---

[2] A full-credit bid is one in which the beneficiary on a deed of trust "purchases" the property at a deed of trust sale by bidding at least the full amount owed on the debt and crediting the debt toward the sale purchase price.

1  on the Mata Loan, as well as expenses for real estate taxes, insurance, and other similar
2  items." (*Id.*)

**DISCUSSION**

**I.     Legal Standard for Motion to Dismiss**

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them," *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), but the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory

allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. Full-Credit Bid Rule

### A. Arizona law governs the deed of trust sale.

Defendants argue that Arizona's full-credit bid rule bars ING's claims. Plaintiff first contends, however, that the law of Delaware, not the law of Arizona, governs its claims because the contract contains a choice-of-law provision. This is incorrect. "In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Because this Court sits in Arizona, the Court must apply Arizona's choice-of-law rules. Under Arizona law, "the law chosen by the parties governs unless that law is contrary to the fundamental policy of a state with a materially greater interest in the issue." *See Landi v. Arkules*, 172 Ariz. 126, 130, 835 P.2d 458, 462 (Ct. App. 1992). The Broker Origination Agreement between ING and RFA states, "This Agreement shall be governed by the laws of the State of Delaware, without reference to its principles of conflict of laws." Despite the choice-of-law clause, however, Plaintiff necessarily conducted the trustee's sale pursuant to Arizona law because Delaware has no equivalent to Arizona's deed of trust sale. Arizona law defines the rights and procedures pertaining to the sale of the deed of trust in this case. Thus, Arizona thus has a "materially greater interest," indeed the only interest, in having its law apply to deeds of trust, and applying Delaware law to an Arizona deed of trust sale would be "contrary to the fundamental policy" of Arizona.

### B. The full-credit bid rule bars ING's claims only to the extent they are based on the loan amount.

Defendants contend ING suffered no damages as a matter of law because ING's full-credit bid at the deed of trust sale fully satisfied any deficiency on Mata's loan obligation to ING. Arizona's antideficiency statute caps deficiency judgments at the total amount owed on the loan less the greater of the property's fair market value or the sale price at the trustee's sale. Ariz. Rev. Stat. § 33-814(A). The antideficiency statute also establishes that in the

- 4 -

1  absence of an action to recover a deficiency judgment within ninety days, a foreclosure sale
2  price is deemed to be in full satisfaction of the underlying obligation and prohibits any other
3  action to recover a deficiency. *Id.* § 33-814(D) ("If no action is maintained for a deficiency
4  judgment within [ninety days], the proceeds of the sale, regardless of amount, shall be
5  deemed to be in *full satisfaction* of the obligation and no right to recover a deficiency in *any*
6  *action* shall exist.") (emphasis added). Therefore, where a creditor has not filed a timely
7  deficiency action against the debtor, the credit bid is deemed to fully satisfy the note whether
8  it is for the full loan amount or not, and the creditor has no right to recover a deficiency in
9  any action.

This result is consistent with an Arizona District Court case discussing Arizona's full-credit bid rule. *333 W. Thomas Med. Bldg. Enters. v. Soetantyo*, 976 F. Supp. 1298 (D. Ariz. 1995), *aff'd* 111 F.3d 138 (9th Cir. 1997). In that case, a lender foreclosed on a deed of trust that had been executed in its favor when the lender had issued a loan to several borrowers. *Id.* at 1299. The lender then made a full-credit bid at the sale and eventually sold the property to another buyer at a loss. *Id.* The lender claimed the property had declined in value due to the borrowers' waste, and the lender brought an action for waste, along with claims for negligence, breach of contract, and breach of fiduciary duty. *Id.* The borrowers moved for summary judgment on the theory that the lender's debt had been satisfied by its full-credit bid. *Id.* at 1300. Citing Arizona Revised Statute Section 33-814, among other authority, the borrowers contended that the full-credit bid extinguished any claims based on that debt. *Soetantyo*, 976 F. Supp. at 1300. While the court found that Section 33-814 technically did not prohibit an action for waste against the borrower, the court found that there were, as a matter of law, no damages because "the very definition of a waste action preclude[d] Plaintiff from recovering." *Soetantyo*, 976 F. Supp. at 1300. As the court noted, "an action for waste brought by a beneficiary under a deed of trust is based upon the assumption that the trust deed as security has been impaired," "the measure of damages for waste is the amount by which the security is impaired—that is, the amount by which the value of the security is less than the outstanding indebtedness." *Id.* The lender's claim was extinguished because the

full-credit bid prevented the lender from showing any impairment to the security (and thus from showing any damages resulting from the loan). *Id.* The court also granted summary judgment on the negligence, breach of contract, and breach of fiduciary duty claims because those claims were "predicated entirely upon [the lender's] interest under the deed of trust," which "were fully and expressly satisfied by the full-credit bid." *Id.* at 1301. The court found that because the lender "failed to demonstrate that its interest under the deed of trust was damaged, it failed to establish an essential element to each of its remaining claims." *Id. Soetantyo* explained that this rule is not overly-harsh on deed-of-trust beneficiaries, who have the option of making a full-credit bid or bidding what the beneficiary assesses to be the property's fair market value and subsequently suing for a deficiency. If the beneficiary bids less than the full amount owing, then the beneficiary might have a claim for damages if it brought a deficiency claim in a timely manner. *Soetantyo*, 976 F. Supp. at 1301. But that was not the case in *Soetantyo*.[3]

Nor is it the case here. Like the lenders in *Soetantyo*, Plaintiff chose to make a full-credit bid at the deed of trust sale and chose not to try to bring a deficiency judgment (if one had been available) within ninety days. The trustee sale occurred in May 2008, and Plaintiff filed this lawsuit nearly a year later, in April 2009. Plaintiff also could have bid a different amount if it assessed the fair market value to be lower and then sued for the loss in a timely manner, but Plaintiff chose not to do so.[4] By making such a bid, Plaintiff received the property in exchange for extinguishing Mata's debt and the security interest. As a result, Plaintiff cannot, as matter of law, assert any damages based on the value of the property.

---

[3] *Soetantyo* arguably draws a distinction between Arizona's antideficiency statute and the full-credit bid rule. The Court need not decide whether a separate, common law full-credit bid rule exists, however. It is sufficient that the antideficiency statute prohibits any attempt to recover a deficiency in any action. Ariz. Rev. Stat. § 33-814(D).

[4] Plaintiff makes no allegation that fraud or misrepresentation caused it to make the *full-credit bid* (notwithstanding its argument that it was initially induced into the *loan agreement*).

- 6 -

1 Plaintiff contends that although this rule might protect debtors, it does not protect *third parties* who allegedly induced the lender to enter the loan agreement in the first place. Plaintiff contends that Section 33-814(A), by its terms, addresses deficiency judgments against borrowers, but not against third parties, such as RFA and Henkels.[5] Ariz. Rev. Stat. § 33-814(A). However, the plain language of the antideficiency statute demonstrates otherwise. Ariz. Rev. Stat. § 33-814(D). First, the statute states the sale proceeds shall be deemed a "full satisfaction" of the obligation. *Id.* If a credit-bid fully satisfies the obligation, then the creditor cannot sue third parties for damages based on any alleged deficiency in the payment of that obligation. Next, the statute prohibits a right to recover an asserted deficiency in "any action." *Id.* By its plain terms, this language mandates that, just as creditors cannot seek to recover a deficiency against the debtor, they cannot seek to recover deficiency damages in any other action. This protection plainly applies to third parties. Other states have also held that their full-credit-bid rules apply to third parties. *Cf. Michelson v. Camp*, 72 Cal.App.4th 955, 963, 85 Cal.Rptr.2d 539, 544 (Ct. App. 1999) (applying the full-credit-bid rule to third parties).

Plaintiff cites two cases for the proposition that the rule does not apply to third parties. These cases, however, are distinguishable. In *Long v. Corbet*, a junior lender sued a guarantor for a deficiency after the junior lender had already received excess funds gained by a senior lender's deed of trust sale. 181 Ariz. 153, 158–59, 888 P.2d 1340, 1345–46 (Ct. App. 1994). However, the lender in that case did not voluntarily make a full-credit bid itself, but rather received excess funds from another lender's deed of trust sale; the court noted that "[t]here was no sale pursuant to [the junior lender's] trust deed, nor did [the junior lender] receive the proceeds directly from the sale." *Id.* at 158, 888 P.2d at 1345. Moreover, the excess funds did not cover the full amount of the debt, and the junior lender thus could seek a deficiency from the guarantor. *Id.*, 888 P.2d at 1345. In contrast, the Plaintiff here

---

[5] Section 33-814(A) allows deficiency judgments against "any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security." Ariz. Rev. Stat. § 33-814(A).

conducted the sale of the deed of trust, rather than being forced into such proceedings by a senior lender. Further, Plaintiff bid an amount that extinguished the entire debt, rather than only part of the debt as in *Long*.

Plaintiff also cites *Glenham v. Palzer*, which held that Washington's antideficiency statute did not immunize third parties from suit, regardless of a full credit bid. 58 Wash.App. 294,298, 792 P.2d 551, 553 (Wash. Ct. App. 1990).[6] For the reasons stated above, however, the Court does not read the Arizona statute as narrowly as *Glenham* interpreted the Washington statute. A full-credit bid would result in no deficiency judgment against a debtor because the difference between the amount owed on a debt and the amount bid at a sale would be zero. Ariz. Rev. Stat. § 33-814. Further, the Arizona statute prohibits a creditor from seeking to recover the deficiency in any other action if it does not seek a deficiency judgment (if one would otherwise be available) within ninety days. *Id.* As against third parties, a full-credit bid would prevent a lender from asserting any damages based on the loan because the difference between the amount owed on the debt and the amount bid (and thus the price to which the lender voluntarily agreed) would be zero. Plaintiff chose its price, and it would be unjust to allow it to seek to recover the loan deficiency from a third party after already extinguishing the entire debt at the deed of trust sale. *See also Nussbaumer v. Superior Court*, 107 Ariz. 504, 507, 489 P.2d 843, 846 (1971) (recognizing that a full-credit bid implicitly satisfies a mortgagee's interest, precluding any further action to recover for loss of security).

Second, Plaintiff argues the antideficiency statute is inapplicable because it seeks neither a deficiency judgment nor damages based on any impairment of the security. Plaintiff contends instead that it seeks damages for "Defendants' fraudulent and tortious

---

[6] At the time, Washington's statute, RCW 61.24.100, stated, "Foreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of the sale price or fair value, and no deficiency decree or other judgment shall thereafter be obtained on such obligation. Where foreclosure is not made under this chapter, the beneficiary shall not be precluded from enforcing the security as a mortgage nor from enforcing the obligation by any means provided by law."

conduct" and "misrepresentations and actions made *before* ING funded the loan." (Dkt. # 14 at 15–16.) It appears, however, that Plaintiff's damages for its claims stem, at least in substantial part, on an asserted deficiency in the payment of the debt. While Plaintiff's claims for fraud and tortious conduct survive to the extent that they assert damages not resulting from the loan deficiency, Plaintiff cannot recover damages that result from an alleged deficiency in the amount of the loan to Mata. Because Plaintiff has survived a motion to dismiss, at least in part, the Court now considers Defendants' contention that several of Plaintiff's claims are nonetheless substantively defective.

### III. Plaintiff's Negligence Claims Survives.

Defendants contend they owed no tort duty to Plaintiff because "the negligence claim is identical to the breach of contract claim." Defendants argue that tort damages are recoverable for breach of contract only where there is a "special relationship." The Court denies the motion, however, because it appears Plaintiff has pled its remaining claims, at least in part, as an alternative to its breach of contract claim. Defendants in a footnote suggest it is possible that no binding contract exists at all. *See* Dkt. # 12 at 2 ("[T]he contract was not executed by RFA [and] the contract is not even signed by the Bank, so for [those] reasons it is not enforceable. But, for purposes of this motion, RFA and Henkels assume the truth of the allegation that the contract was in force . . . ."). If no contract exists, then Plaintiffs may nonetheless sue in tort for essentially the same conduct, but these tort claims would not be "identical to the breach of contract claim" if no contract claim remained. Therefore, the Court denies the motion because it is possible a tort claim exists independently from any contract claim.

### IV. Plaintiff's Negligent Misrepresentation Claim Survives.

For the same reason, the Court denies Defendants' motion regarding the negligent misrepresentation claim. Defendants contend the economic loss rule bars the negligent misrepresentation claim because "these claims are the same claims that [Plaintiff] makes in its breach of contract claim." But if no contract claim remains, then Plaintiff is permitted to

1 plead in the alternative. The Court denies the motion without deciding whether the economic loss rule applies.

## V. Plaintiff's Unjust Enrichment Claim Survives.

Although an unjust enrichment claim is unavailable where there is a contract between the parties, an unjust enrichment claim can provide a remedy when a contract is unenforceable. *Trustmark Ins. Co. v. Bank One, N.A.*, 202 Ariz. 535, 542, 48 P.3d 485, 492 (Ct. App. 2002). Because Plaintiff may plead unjust enrichment in the alternative to its breach of contract claim, the Court denies the motion on this ground.

## VI. Plaintiff's Fiduciary Duty Claim Fails.

Defendants contend Plaintiff's Fiduciary Duty claim fails because it is based only on the faulty assertion that RFA and Henkels were Plaintiff's agents. "[A]n agent is one who acts on behalf of another." *SE Ariz. Med. Ctr. v. AHCCCS*, 188 Ariz. 276, 282, 935 P.2d 854, 860 (Ct. App. 1996) (internal quotations omitted). Meanwhile, a "fiduciary relationship is a confidential relationship whose attributes include great intimacy, disclosure of secrets, [or] intrusting of power." *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 24, 945 P.2d 317, 335 (Ct. App. 1996). Although the existence of a fiduciary relationship depends on the totality of the circumstances, *SE Ariz. Med.*, 188 Ariz. at 282, 935 P.2d at 860, Plaintiff still must plead circumstances that could establish a fiduciary relationship. *See Iqbal*, 129 S. Ct. at 1950.

The Complaint asserts, "As agents of ING, Royal Financial and Henkels owed . . . duties to ING . . . The parameters of this duty are further demonstrated by the terms of the Agreement." (Dkt. # 1 at 19.) The Complaint, however, alleges no facts to establish that RFA or Henkels acted on Plaintiff's behalf as agents. The Complaint alleges that a contract existed, that RFA provided information and services to Plaintiff, and that Plaintiff relied on RFA's knowledge and expertise. This alone is insufficient to plead an agency relationship because "[m]ere trust in another's competence or integrity does not suffice" to create such a relationship. *Standard Chartered*, 190 Ariz. at 24, 945 P.2d at 335.

Moreover, the contract, which is incorporated by Plaintiff's reference to it in the Complaint, actually alleges that no agency relationship existed. Where a "contract [is] attached to the complaint and incorporated" into the complaint, the Court need not "accept as true conclusory allegations in the complaint which are contradicted by the clear import of the contract itself." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 665 (9th Cir. 1998). The contract states that "[t]his Agreement and transactions entered into pursuant hereto shall not create between [the parties] a relationship of agency" and that RFA is "expressly prohibited from holding itself out as an agent." Therefore, because the contract's plain language negates the unsupported allegation that an agency relationship exists, the Court dismisses the Fiduciary Duty claim.

**VII. Plaintiff's Attorneys' Fees Claim Survives Against RFA, but not Against Henkels.**

Plaintiff's Attorneys' Fees claim appears to allege not only attorneys' fees based on breach of contract, but also based on several other theories against Henkels individually. Generally, "attorneys' fees are not recoverable unless they are expressly provided for either by statute or contract." *Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 314, 316, 714 P.2d 807, 809 (1986). Plaintiff may seek attorneys' fees for breach of contract against RFA because, under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A).

As to Henkels, however, Plaintiff's claim for attorneys' fees fails. The Attorneys' Fees claim asserts that "because Henkels is the alter ego of Royal Financial and participated in the tortious acts that constitute a breach of the Agreement, equity demands that Henkels be bound by the Agreement and obligations to reimburse ING for its damages along with its attorneys' fees and litigation expenses." (Dkt. # 1 at 24.) "The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel v. Day*, 16 Ariz.App. 206, 208, 492 P.2d 455, 457 (Ct. App. 1972) (internal quotations omitted). Although "[a]lter ego determinations are

highly fact-based," *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045 (D. Or. 2004), "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim" because "a plaintiff must allege specifically [the facts and elements of an alter-ego claim]." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003); *see also Twombly*, 550 U.S. at 555 (requiring more than "labels and conclusions" to survive a motion to dismiss). Plaintiff has not alleged facts to make an alter-ego claim plausible. The assertion in the Attorneys' Fees claim is a blanket label; it also does not reference any facts in the rest of the Complaint that would support such a label, and, even if it had, the remainder of the Complaint has insufficient factual detail of Henkels's interest and ownership. Even if discovery might reveal facts supporting an alter-ego claim, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

The Attorneys' Fees claim also seeks to make Henkels liable under ING's contract with RFA because of "tortious acts," "fail[ure] to act in good faith," and "misconduct." (Dkt. # 1 at 24.) Plaintiff, however, does not assert a coherent legal theory that justifies awarding attorneys' fees on these bases alone. Accordingly, the Court grants the motion to the extent Plaintiff seeks attorneys' fees from Henkels.

## CONCLUSION

Plaintiff may not maintain any cause of action for which damages are based solely on a deficiency in the Mata loan. To the extent Plaintiff's claims otherwise survive, however, Plaintiff may maintain an action for other damages. As for Plaintiff's underlying claims, the Court denies the motion regarding the Negligence, Negligent Misrepresentation, and Unjust Enrichment claims. The Court grants the motion regarding the Fiduciary Duty claim. The Court grants the motion regarding Attorneys' Fees with regard to Henkels only. To the extent Plaintiff can cure any defects in its Complaint, the Court grants Plaintiff leave to amend because amendment "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART** with leave to amend.

DATED this 3rd day of December, 2009.

_____
G. Murray Snow
United States District Judge